Valentine vs. Washington et al.

---

### VALENTINE V. WASHINGTON ET AL.

EQUITY—*Injunction.*

The appel'ant filed his bill in equity against the defendants, alleging that on the 1st of March, 1874, Mrs. DeValcourt and Washington entered into a written contract, which was duly recorded, by which she agreed to furnish him as much land as he could cultivate, and give him all excess of 1200 pounds of lint cotton for every fifteen acres cultivated. She was also to furnish him supplies while he was making the crop, but no part of the crop was to be delivered to him until all his indebtedness to her was settled. On the 7th of August of the same year, she, by deed of trust, duly recorded, conveyed to the plaintiff all her interest in the crop, to secure the payment of a debt to Gidirl, by the 1st of January, 1875. With power to take possession and sell, upon default of payment. That Washington gathered and baled the crop, amounting to seven bales, and sold it to Willing. That his indebtedness to Mrs. DeValcourt was unsettled, but amounted to more than the value of the cotton—that the trust debt was unsettled, and Willing was about to move the cotton beyond the jurisdiction of the court. Prayer for injunction to restrain him until a settlement of Washington's account with Mrs. DeValcourt could be had, and plaintiff's rights in the cotton should be determined. Upon demurrer to the bill, held: 1st. That the contract was in the nature of a mortgage, which Mrs. DeValcourt could en orce in equity. 2d. That by the deed of trust the plaintiff acquired all her rights in the crop, legal and equitable, and was entitled to the injunction to restrain its removal.

APPEAL from *Chicot* Circuit Court in Chancery.

Hon. T. F. SORRELLS, Circuit Judge.

*Reynolds*, for appellant.

———— *contra.*

ENGLISH, C. J. :

This was a bill for injunction to prevent the removal of cotton covered by a deed of trust, etc.

The bill was filed in the Circuit Court of Chicot county, 23d February, 1875, by Mark Valentine, trustee in the deed of trust, against Kate S. DeValcourt and Alexander DeValcourt, makers of the trust deed, and George Washington, a tenant of Mrs. DeValcourt, John Bergman and Thomas E. Willing.

It appears from the allegations of the bill, and the exhibits, that on the 1st March, 1874, Mrs. Kate S. DeValcourt and George Washington entered into a written contract (acknowledged and recorded 24th October, 1874) by which Washington agreed to work for Mrs. DeValcourt in the cultivation of a crop of cotton and corn on Holly Ridge plantation, upon the terms and conditions following :

She was to furnish as much land on said plantation as he could cultivate, the same to be cultivated in good and farm-like manner ; and she was to pay or turn over to him all excess of 1200 lbs. of lint cotton for every fifteen acres cultivated, he to gin and bale the cotton. She agreed to sell and advance to him supplies while making the crop, and no part or interest in said crop was to be assigned or delivered to him until he arranged satisfactorily with her for the payment of all indebtedness due from him to her.

It further appears that on the 7th of August, 1874, Mrs. DeValcourt and her husband, Alexader DeValcourt, by deed of trust of that date, conveyed to complainant, Mark Valentine, as trustee, all of the interest of Mrs. DeValcourt in a certain crop of cotton and corn, then being grown on the Holly Ridge plantation, on Chicot Lake, and the mules, wagons, and farming implements on said plantation belonging to her ; to secure the payment of a debt of $1,000, jointly owed by Mrs. DeValcourt and her husband, to J. J. Gidirl, of the firm of

Clapp, Bros. & Co. of New Orleans, to be paid on or before the first of January, 1875 ; with power to the trustee to take possession of the property, on default of payment, and sell at public auction to pay the debt, etc. The trust deed was acknowledged, and filed for registration on the day of its execution.

The bill after setting out and exhibiting the deed of trust, and the contract between Mrs. DeValcourt and Washington, further alleges, in substance :

That during the year 1874, and in order to enable Washington to raise said cotton, Mrs. DeValcourt advanced large sums of money and supplies to him, which, with the use of the land on which the cotton was raised, created an indebtedness in her favor from him of $500, which had not been paid or satifactorily arranged ; and that under said contract Washington was not entitled to possession of said cotton.

That, on the — day of January, 1875, Alexander DeValcourt, as agent of his wife, said Kate S., delivered to complainant the right of possession and control of all of the interest of said Kate S. in all of the cotton raised in 1874, on said Holly Ridge plantation.

That Washington raised seven bales of cotton during said year, on said plantation, which were tied up and ready for market. That in fraud of the right of the complainant, Washington had sold, or pretended to sell said cotton to defendant, Thomas E. Willing, who was acting as the agent of defendant, John Bergman, and that Willing was about to remove the said cotton out of the jurisdiction of the court.

That the debt of Mrs. DeValcourt and husband secured by deed of trust to complainant was unsettled, but what amount remained still due, complainant was unable to allege.

That the indebtedness of Washington to Mrs. DeValcourt,

which was unsettled, amounted to more than the value of said seven bales of cotton.

That unless restrained by the court said cotton would be removed, and great and irreparable injury would be sustained by complainant.

Prayer that an order of injunction issue, directed to all of said defendants, enjoining and restraining each and all of them, their agents and attorneys, from removing said cotton, or interfering or intermeddling with the same, until a settlement of the account of Washington with Mrs. DeValcourt could be had, and the rights of complainant in said cotton ascertained and determined, and that the right of possession of complainant in said cotton be quieted, and for all other proper relief.

On the filing of the bill, the court being in session, an interlocutory injunction was granted.

At the return term, June 30th, 1875, the defendants having been served with process, the solicitor of Washington, Willing and Bergman, filed a demurrer to the bill, on the grounds:

"1. The complaint does not state facts sufficient to constitute a cause of action.

"2d. It appears upon the face of the complaint, that the court has no jurisdiction of the subject of the action."

A seperate answer to the bill was also filed for Washington, and a joint answer for Willing and Bergman.

At the October term, 1875, the demurrer to the bill was taken up and heard by the court, and sustained, the interlocutory injunction dissolved, and the cause continued, and a writ of inquiry to assess damages, ordered, returnable to the next term.

At the July term, 1877, the matter of damages having been submitted to the court at a previous term upon an agreed statement of facts, signed by complainant and the solicitor of Washington, Willing and Bergman, and taken under advisement,

the court assessed against complainant, in favor of the defend-
ants, who had appeared and pleaded, fifty dollars damages, and
rendered a decree in their favor therefor, with costs.

The complainant took a bill of exceptions, putting upon
record the agreed statement of facts, and appealed to this
court.

The facts agreed on are, in substance, that the cotton in con-
troversy, at the commencement of the suit, was at the gin-
house of one J. F. Robinson, in Chicot county. That within
one or two days previous thereto, the cotton had been, by
defendant Washington, under the sale alleged in the complaint,
delivered to the agent of defendant Bergman, so far as he had
the right to deliver the same, and was by said agent marked
with the mark of Bergman, and that after the issuance of the
interlocutory injunction complainant shipped the cotton to New
Orleans, and there sold it in the usual course of business for
$306.38.

That the damages caused by the alleged wrongfully suing
out of said injunction, amounted to the aggregate sum of $50.

I. The court below sustained a demurrer to the whole bill,
whether upon the ground that the facts alleged did not make a
case for equitable relief, or on the ground that the court had
no jurisdiction of the subject matter of the bill, does not
appear.

The written and registered contract between Mrs. DeVal-
court and her tenant, Washington, was in the nature of a mort-
gage for rent and supplies. The crop was unplanted at the
time the mortgage was executed (1st March, 1874), and
though, by statute, she had a lien for rent, the mortgage gave
her a lien in equity upon the cotton crop of her tenant when it
came into existence for both rent and supplies. *Apperson &
Co.* v. *Moore*, 30 Ark., 56; *Driver* v. *Jenkins*, Ib. 120;
*Alexander* v. *Pardue*, Ib. 356; *Hamlet* v. *Tallman et al.*, Ib.

Valentine vs. Washington et al.

506 ; *Tomlinson* v. *Greenfield*, 31 Ark., 558 ; *Roberts et al* v. *Jacks*, Ib. 605.

The mortgage for supplies being at law invalid, she would have been compelled to resort to a court of equity to foreclose it and enforce her lien.

Had she not conveyed her interest in the cotton crop, by the trust deed, to appellant, she might have filed a bill in equity to foreclose the mortgage for both rent and supplies, and upon an allegation that her tenant had attempted to sell the cotton, and that it was about to be removed from the jurisdiction of the court, she would, most unquestionably, have been entitled to an interlocutory injunction to prevent its removal. *High on Jurisdiction*, Sec. 323.

By the deed of trust, she and her husband conveyed to appellant, as trustee, all of her interest in the cotton crop, but she could convey to him no greater interest, or rights, legal or equitable than she herself had.

When Washington attempted to sell the cotton, and it was about to be removed, as alleged in the bill, appellant had no adequate remedy at law to enforce his lien under the trust deed, or to prevent its removal. It was his duty as a trustee to protect the property, and upon the allegation of the bill he was entitled to an injunction to prevent its removal.

Upon the two instruments and the allegations of the bill, he made a *prima facie* case for equitable relief, within the jurisdiction of the court, and the court erred in sustaining the demurrer to the bill.

The interlocutory injunction having been dissolved upon the erroneous sustaining of the demurrer to the bill, it follows that the decree for damages and cost was also erroneous.

The decree must be reversed, and the cause remanded for further proceedings.